*U.S. Department of Justice*

*United States Attorney*
*District of Maryland*
*Northern Division*

Rod J. Rosenstein
United States Attorney

Stefan D. Cassella
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4986
MAIN: 410-209-4800
FAX: 410-962-5130
TTY/TDD: 410-962-4462

January 4, 2012

Frank V. Boozer, Jr.
Covahey, Boozer, Devan & Dore, P.A.
614 Bosley Ave.
Towson, MD 21204

Re: <u>United States v. Chung K. Choi</u>

Dear Mr. Boozer:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by the close of business on January 27, 2012, it will be deemed withdrawn. This agreement is contingent on the approval of the Tax Division of the U.S. Department of Justice. The terms of the agreement are as follows:

### Offense of Conviction

1. The Defendant agrees to waive indictment and plead guilty to a criminal information charging one count of tax evasion in connection with his 2006 tax return, in violation of 26 U.S.C. § 7201. The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

### Elements of the Offense

2. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

The Defendant willfully attempted to evade or defeat the assessment of a tax, or the payment thereof, by filing a tax return that understated the amount of gross income, that there was in fact a tax due and owing, and that the Defendant engaged in affirmative act, to wit: structuring currency transactions, evidencing his intent.

## Penalties

3.  The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 5 years incarceration and a $250,000 [handwritten: 100,000] fine, together with the costs of prosecution. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.  The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a.  If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b.  If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c.  If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The

Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

      d.     The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

      e.     If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.     By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

      g.     If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

      h.     By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his/her attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

6.  This Office and the Defendant understand, agree and stipulate to the following Statement of Facts which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

The Defendant owns and operates a liquor store known as Frankford Garden Liquors at 5418 Sinclair Lane, Baltimore, MD 21206. The corporate tax returns that the Defendant filed for the years 2006, 2007, 2008 and 2009 each understated the amount of the corporation's taxable gross receipts by more than $300,000. As reflected in the following table, the total understatement of income was in excess of $1.5 million. The defendant agrees that he understated the corporation's income to evade the payment of taxes.

| Year | Gross Receipts per Return (Form 1120) | Actual Receipts | Underreporting |
|---|---|---|---|
| 2006 | $891,399.00 | $1,330,091.00 | $438,692.00 |
| 2007 | $953,223.00 | $1,302,101.07 | $348,878.07 |
| 2008 | $986,861.00 | $1,390,618.29 | $403,757.29 |
| 2009 | $1,007,398.00 | $1,388,232.73 | $380,834.73 |
| | | | $1,572,162.09 |

In addition, from at least March 5, 2009 through December 16, 2010, the period to which the Government's investigation was limited, the Defendant

4

routinely deposited currency into his bank accounts at Susquehanna Bank and PNC Bank with the intent to evade the $10,000 currency transaction reporting requirement. As set forth in the tables attached as Schedules A and B, the currency deposits included numerous instances in which the Defendant deposited amounts totaling more than $10,000 in two or more separate transactions on the same day or on consecutive days, with the amounts involved in each transaction being kept below $10,000 to avoid triggering the reporting requirement. The total amount of structured deposits during the aforementioned period was at least $745,000.

This Office and the Defendant disagree as to the amount of taxes due and owing as a result of the Defendant's underreporting of his gross receipts. The Government alleges that the amount is more than $400,000 but less than $1,000,000. The Defendant reserves the right to argue that the amount is more than $200,000 but less than $400,000. The IRS's calculation of the taxes due and owing is set forth as follows:

| Additional Tax Due and Owing for Criminal Purposes | | | | |
|---|---|---|---|---|
| Year | Federal Income Tax | State Income Tax | State Sales Tax | Total By Year |
| 2006 | $146,663.76 | $30,195.48 | $21,934.60 | $198,793.84 |
| 2007 | $119,631.40 | $24,629.99 | $17,443.90 | $161,705.30 |
| 2008 | $137,112.24 | $33,269.86 | $24,225.44 | $194,607.53 |
| 2009 | $129,801.37 | $31,495.86 | $22,850.08 | $184,147.31 |

| Year | Total Federal Income Tax* | Total State Income Tax | Total State Sales Tax | Total For All years |
|---|---|---|---|---|
| 2006 - 2009 | $533,208.77 | $119,591.19 | $86,454.02 | $739,253.98 |

\* The additional tax due and owing for criminal purposes calculations do not include penalties or interest that will be assessed by civil functions of the IRS post sentencing.

Under the Advisory Sentencing Guidelines, § 2T1.1 and § 2T4.1(F), if the amount due and owing is more than $400,000 but less than $1,000,000, the Defendant's offense level would be 20.

This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct.

5

This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty.  This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

7. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

8. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.  The Defendant reserves the right to request a variance under 18 U.S.C. § 3553(a).

## Obligations of the United States Attorney's Office

9. This Office agrees that if this agreement is approved by the Tax Division of the U.S. Department of Justice, it will not file any criminal charges relating to any tax years other than those covered by the Criminal Information, and that it will not file any criminal charges relating to any violation of 31 U.S.C. § 5324.  This Office also agrees to recommend a sentence within the advisory guidelines range.

10. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of any criminal violations that this Office has agreed not to charge.

## Forfeiture

11. The Defendant agrees to consent to the entry of an order of forfeiture in the parallel civil forfeiture case styled as *United States v. $99,527.35 in U.S. Currency,* Civ. No. 11-cv-03368-RDB, in the amount of $99,527.35. The Defendant understands that none of the forfeited property may be used to satisfy or be credited toward the payment of any taxes, penalties or interest owed to the United States or the State of Maryland in connection with the underreporting of income for the tax years 2006 through 2010. The Defendant also understands that the balance of the funds seized by the Internal Revenue Service on or about May 6, 2011 (approximately $13,531) will not be forfeited but will be applied to the Defendant's outstanding tax liability, including penalties and interest, to the United States and the State of Maryland, in lieu of being released to the Defendant.

12. The Defendant represents that with the exception of liens held by financial institutions, he is unaware of any third-party interest in any of the specific assets that he has agreed to forfeit, and that he will not assist any third party in asserting a claim to the forfeited assets in the related civil forfeiture case, and that he will testify truthfully in any such proceeding.

## Payment of Taxes

13. If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. See 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. See 26 U.S.C. § 6201 (a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

14. The Defendant agrees that he will sign any IRS forms deemed necessary by the IRS to enable the IRS to make an assessment of his tax obligation. Defendant also agrees to sign IRS Form 8821, "Tax Information Authorization."

15. In order to facilitate the collection of financial obligations, the Defendant expressly authorizes this Office to obtain a credit report on him, his family, and his business, and agrees to submit a completed financial statement no later than February 29, 2011 fully disclosing all assets in which the Defendant has an interest or over which the Defendant exercises any control, directly or

indirectly, including those held by a spouse, nominee, or other third party. The Defendant promises that the financial statement will be complete, truthful and accurate, and understands that any willful falsehood on the financial statement will constitute a new an separate offense for which the may be prosecuted by this Office.

16. Defendant agrees not to file any claim for refund of taxes or interest represented by any amount paid pursuant to this agreement, including the amount subject to forfeiture.

17. Defendant understands that he is not entitled to credit with the IRS for any payment sent to an incorrect address or accompanied by incomplete or inaccurate information, unless and until any payment is actually received by the Internal Revenue Service and identified by it as pertaining to his particular liability.

18. Nothing in this agreement shall limit the IRS in its lawful examination, determination, assessment, or collection of any taxes, penalties or interest due from the defendant for the time period(s) covered by this agreement or any other time period.

## Waiver of Further Review of Forfeiture

19. The Defendant further agrees to waive all constitutional, legal and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

## Waiver of Appeal

20. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

    a) The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b) The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the term of imprisonment at the upper end of the guideline range ultimately determined by the court to be applicable, (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below the term of imprisonment at the lower end of such guideline range.

c) Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d) The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

21. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue

sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

22.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

23.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than

those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____
Stefan D. Cassella
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

2/3/12
_____
Date

_____
Chong K. Choi

I am Frank V. Boozer, Jr., attorney for the Defendant. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

2/3/12
_____
Date

_____
Frank V. Boozer, Jr.

11